RODEMACHER v. THE MIL. & ST. P. R'Y Co.

1. **Constitutional Law**: RAILROADS: DAMAGES. Section 1289 of the Code, rendering railway companies liable for all damages by fire, occasioned by the operation of their roads, is not unconstitutional.

> *Argument* 1. Articles of incorporation confer no power or privilege not possessed by natural persons.
>
> *Argument* 2. The entire power of legislative control resides in the legislature, unless such power is expressly limited in the grant to the corporation.
>
> *Argument* 3. The right to enact the statute is derived under the police power of the state.
>
> *Argument* 4. The statute simply determines which of two innocent parties shall be responsible for an injury.

2. **Railroad**: RIGHT OF WAY: DAMAGES. It will not be presumed that injuries by fire to fences and timber a mile from the railway were considered in estimating damages for right of way.

3. ——: ——: LOSS BY FIRE. The service of a written notice is not necessary to the validity of a claim for damages for losses by fire.

*Appeal from Floyd Circuit Court.*

THURSDAY, OCTOBER 7.

THE petition of plaintiff claims one hundred and fifty dollars, on account of damages alleged to be done his fences and timber from a fire started by an engine on defendant's road.

The answer, amongst other defenses, alleged that in January, 1868, there was incorporated under the laws of the state of Iowa, a company known as the McGregor & Sioux City railway company. That during the year 1868 and 1869 said corporation constructed the road near which the injuries occurred. That said corporation procured from the then owner of the tracts of land upon which the property alleged to have been injurd and destroyed was situated a strip of land one hundred feet in width, for the location and operation of the road, and that the McGregor & Sioux City railway company in 1869, conveyed by deed to defendant.

The plaintiff demurred to the count of the answer setting forth the above defenses, and the demurrer was sustained. The cause was then submitted to the court upon the following

agreed statement of facts: "The plaintiff owns the N. E. ¼ of the N. E. ¼, and S. E. ¼ of S. E. ¼, section 1, all in town 95, range 15, and, on the 11th day of October, 1873, had the same fenced and improved with an ordinary fence; outside of his fence was open prairie and timber land belonging to others, and the ordinary and natural growth of grass and weeds standing thereon, dry and dead, as grown, and on the land on which the fence was situated. The railroad track of defendant passes along the north line of sections 1 and 2, town 95, range 15. The fire started in dry grass accumulated near the end of the ties of said track about the center of section 2, and ran out across the railroad land, or right of way, and burned out toward the center of said section 2, and then angling across section 1 to plaintiff's farm, through the dry grass afore-· said, where the injury complained of was done. The fire orig- inated from, and by means of a passenger train going west on said railroad track, and operated by said company, and the damages done were one hundred and twenty-five dollars."

The court thereupon rendered judgment for plaintiff for $125.00 and costs. Defendant appeals.

*Thomas Updegraff*, for appellant.

A general incorporation law is general only in the sense that it is open to all who desire to avail themselves of its provis- ions, but it constitutes a special charter to each body organ- ized under it. (*State Bank of Ohio v. Knoop*, 16 How., 369.) Every valuable privilege given by the charter which conduced to the acceptance of it, is a contract which cannot be changed by the legislature where the power to do so is not reserved. (*Dodge v. Woolsey*, 18 How., 331.) The charters of railroads and similar corporations constitute as between them and the state *contracts*, and any essential alteration in them, made after acceptance and expenditure of money under them, is void. (3 Pars. on Con., 6th ed., 632; Angell and Ames on Corp., § 767; Cooley on Const. Lim., 273.) Sovereignty in govern- ment has no existence in fact. (1 Dana, 500.) The police power of the state cannot be exercised to violate contract obligations,

but only to prevent unnecessary injuries. (Cooley on Const. Lim., 572.) It may well be doubted whether that is a proper police regulation which imposes a new obligation for the benefit of others, upon a party guilty of no neglect of duty. (Id., 581.) Where similar statutes have been sustained—in Maine and Massachusetts,—an insurable interest is given to the railroad companies, and it has been held that the statute does not apply to property, which in its nature is not capable of insurance. (1 Redf., 479; Pierce on Am. R. R. L., 319, 37 Me., 92.) Every alteration of a contract, however unimportant, impairs its obligation. The degree of impairment is immaterial. (4 Wheat, 518; 16 Wall, 314; 10 Barb., 87; 18 Id., 585; 21 Id., 499; 21 N. Y., 1; *Washington Bridge Co. v. State*, 18 Conn., 53; *Bailey v. R. R.*, 4 Harrington, 389; 13 Am., L. R. (N. S.) 174; *Com. v. Penn. Canal Co.*, 66 Pa., 41; 5 Am. R., 329, and cases cited.) A railway company, by its contract securing right of way, acquires the vested right to construct and operate its railway in a careful and proper manner over the premises affected, subject only to liability for the negligent or improper exercise of the right. (2 Iowa, 288.) The exposure to destruction by fire of property adjacent to a railway forms a proper element in the estimation of damages. (1 Redf. on Railways, 303–5; 1 Foster 359; *Snyder v. W. U. R. R.*, 25 Wis., 60; *W. & R. R. Co. v. Stanford*, 60 Pa. St., 374.) Railway companies, having acquired the right to the use of the right of way, cannot be again compelled to pay for that for which compensation has already been given. (*Com. v. Essex Co.*, 13 Gray, 239; *Milliman v. O. & S. R. R.*, 10 Barb., 87; *Marsh v. N. Y. & E. R. R.*, 14 Barb., 370; *Toombs v. R. & S. R. R.*, 18 Id., 585.) One who could have prevented destruction of his property by burning the dry accumulations about it, or employing other means common with the owners of property similarly situated, is guilty of contributory negligence. (*Kesee v. C. & N. W. R. R. Co.*, 30 Iowa, 78; *O. & N. W. R. v. Shanefeldt*, 47 Ill., 497.) Whenever a new liability or right is created, and a new remedy provided, that remedy is exclusive. (3 Hill, 38; 1 Hill on Torts, 118–9.)

*Boulton & Duncan,* for appellee.

For all the purposes of this case the defendant stands in the position of a natural person. (Am. Law Reg., Vol. 13, 187; *Charles River Bridge v. Warren Bridge,* 11 Pet., 420; *R. F. & P. R'y v. Louisa R'y,* 13 How., 71; *Turnpike Co. v. The State,* 3 Wall, 210; *Boston & Lowell R'y v. Salem & Lowell R'y,* 2 Gray, 1; *Ponchartrain R'y v. N. O. C. L. P. R'y,* 11 La Ann., 253.) The police power of the state extends to the protection of all property within it. (Cooley on Const. Lim., 573.) In enacting the statute in question, the legislature has only re-asserted the common law; it has avoided all constitutional encroachments. (*Lyman v. B. & W. R'y,* 4 Cush, 288; *Norris v. Androscroggin R'y,* 39 Me., 273.) Plaintiff was not required to burn the accumulations of grass and weeds to prevent the destruction of his property. (*Kellogg v. C. & N. W. R. R.,* 26 Wis., 223.) Questions in a law case must be raised in the court below, to entitle them to consideration in the supreme court. (*McNaught v. C. & N. W. R. R. Co.,* 30 Iowa, 336.)

DAY, J.—I. This case involves the constitutionality of the latter clause of Sec. 1289 of the Code of 1873, which is as follows: "That any corporation operating a railway shall be liable for all damages by fire that is set out or caused by the operating of any such railway, and such damages may be recovered by the party damaged in the same manner as set forth in this section in regard to stock, except as to double damages."

1. CONSTITU-
TIONAL law:
railroads:
damages.

In this state corporations are created under a general incorporation law. The Revision, Sec. 1158, Code of 1873, Sec. 1058, provides: Any number of persons may associate themselves and become incorporated for the transaction of any lawful business, including the establishment of ferries, the construction of canals, railways, bridges, or other works of internal improvement; but such incorporation confers no power or privilege not possessed by natural persons, except as hereinafter provided. The next section enumerates certain

powers of a corporation which are, to have perpetual succes-sion, to sue and be sued in the corporate name, to have a common seal, to render the interest of the stockholders trans-ferrable, to exempt the private property of its members from debts, to make contracts, acquire and transfer property, to establish by-laws and make rules and regulations in accord-ance with law. The possession of these powers, together with the right to carry on the business for which the corporation is created, and the right to exercise all the incidental powers essential to a proper enjoyment of the powers specifically con-ferred, constitute the franchise of the corporation, which exists in virtue of contract between the state and the corpora-tion and may not be essentially abridged or impaired by the legislature. In the case of *Dartmouth College v. Woodward*, 4 Wheaton, 518, Chief Justice Marshall says "a corporation is an artificial being, the mere creature of the law; it possesses only those properties which the charter of its creation confers upon it, either expressly or as incidental to its existence." And in *Providence Bank v. Billings*, 4 Peters, 514, the same judge says: "The great object of an incorporation is to be-stow the character and properties of individuals on a collected and changing body of men. Any privileges which may exempt it from the burdens common to individuals do not flow necessarily from the charter, but must be expressed in it, or they do not exist." This must be especially true under our general incorporation law, which enacts that, except as otherwise provided, an article of incorporation confers no power or privilege not possessed by natural persons. It is claimed by appellant that the statute in question, (Code, Sec. 1289), impairs the contract existing between the state and the corporation under which its charter is conferred. The defend-ant's charter authorizes it to construct and operate a railroad, and, as incidental to this right, confers upon it all the powers necessary to its proper enjoyment.

Any legislation which deprives the defendant of the right to operate its road would clearly be an infraction of contract, and unconstitutional.

But there is no implied contract between a state and a cor-

poration that there shall be no change in the laws existing at the time of the incorporation which shall render the use of the franchise more burdensome or less lucrative, any more than there is between the state and an individual that the laws existing at the time of the acquisition of property shall remain perpetually in force. See *Thorpe v. The Rutland & Burlington R'y Co.*, 27 Vt., 140. An individual may turn all his real estate into money, for the purpose of making loans when the legal rate of interest is ten per cent., yet there can be no doubt that a legislature could afterward reduce the legal rate to six per cent., thus materially lessening his profits and affecting the value of his property. And the same thing can be done with respect to a corporation. In 9 Cushing, 604, it is determined that the Provident Institution for Savings, in the town of Boston, chartered in the year 1816, is subject to the general laws of the commonwealth, passed since that time, relating to investments of deposits by savings banks and institutions for savings, and that, although the institution, at the time it was incorporated, had the right and power under the general laws, to loan money at six per cent. interest, yet there can be no doubt that the legislature could alter the law so that the institution could take only four or five per cent. In the course of their opinion, the court say: "It may, perhaps, be said that the corporation, at the time it took its charter, could invest its deposits at its own discretion without restriction as to the modes of investment. Be it so. But it thus acted, not by virtue of any special power or privilege granted in the charter, in relation to investments, because the charter is silent upon that subject, but wholly under and by virtue of the general laws of the commonwealth. No special power or privilege being given in the charter, as to the mode of conducting its business, the corporation managed all its affairs according to the general laws. It took its charter subject to the general laws, and, of course, subject to such changes as might be rightfully made in such laws. The legislature, surely, did not guarantee to the corporation that there should be no change in the laws, that the whole system of legistation should remain as it was in 1816."

In . *The Ohio and Mississippi Railroad Company v. McClelland*, 25 Illinois, 140, it was held that an act requiring all railroads then completed and open for use to be fenced, and imposing a penalty for all damages which may result, although such requirement was not expressed in their charters, did not contravene a provision of the constitution of that state similar to our own constitution. In announcing the opinion, the court said: "In granting this charter, the legislature has not, in terms, surrendered the right to . subject it to general police regulations. If such a result has ensued, it is alone by implication. But we have seen that, in the absence of express language, such an exemption cannot be inferred. When these bodies are created, although they are artificial persons, intangible, and only existing in legal ·contemplation, they are held to be subordinate to, and under the control of the government, to the same extent as individuals. They have at all times been required to conform to the general laws of the state, precisely as if they were real and not artificial persons. To hold otherwise would be to say that the legislature might create an *imperium in imperio*." In *Gorman v. Pacific Railroad*, 26 Missouri, 441, the same conclusion was reached, where the charter contained no reservation to the legislature of such power. In this. case the court said: "It is insisted that by the original charter of the company, as amended previously to the passage of the act of 24th of February, 1853, there was no constitutional authority in the general assembly to alter its charter by imposing upon it the burden of fencing the road, an obligation which was not imposed by the original law creating the company. * * * It is settled that a private charter is a contract between the government and the company to which it is granted. and that, as such, it is secured by the constitution of the United States from violation by the state conferring it. But, while private charters are thus protected, it is also true that corporations, like natural persons, are subject to those regulations which the state may prescribe for the good government of the community. There is no reason why corporations should not be subject to police regulations, as well as natural persons." In

*Thorpe v. The Rutland and Burlington Railroad Co.*, 27 Vt., 140 the same conclusion was reached, in which case Mr. Chief Justice Redfield, announcing the opinion of the court, said: " It must be conceded that all which goes to the constitution of the corporation and its beneficial operation is granted by the legislature and cannot be revoked, either directly or indirectly, without a violation of the grant, which is regarded as impairing the contract, and so prohibited by the United States Constitution. And if we suppose the legislature to have made the same grant to a natural person which they did to defendants, which they may undoubtedly do, (*Moor v. Veasie*, 32 Maine, 343; S. C. in Error in the Sup. Ct., U. S., 4 Peters, 568,) it would scarcely be supposed that they thereby parted with any general legislative control over such person, or the business secured to him. But it must, in fact, be the same thing when applied to a corporation, however extensive. In either case the privilege of running the road, and taking tolls, or fare, or freight, is the essential franchise conferred. Any act essentially paralyzing this franchise, or destroying the profits therefrom arising, would, no doubt be void. But beyond that, the entire power of legislative control resides in the legislature, unless such power is expressly limited in the grant to the corporations." See, also, *Bank of The Republic v. County of Hamilton*, 21 Illinois, 53; *Galena & Chicago Union R'y v. Loomis*, 13 Ill., 548; *Norris v. Androscoggin R'y Co.*, 39 Maine, 273; *The People v. Thomas Gallagher*, 4 Michigan, 244.

In the above cases, from 25 Ill., 26 Mo., and 37 Vt., the statutes considered were enacted after the various railroads affected by them had been constructed under charters imposing upon the roads no obligation to fence, and when the general statutes contained no such requirement. When the railroads were constructed the companies had a right to operate them without fences, and they were liable for damage to stock only in the case of negligence. The effect of these statutes was, not to take away the franchise—the right to operate the road—but to impose upon it conditions and subject it to burdens which did not exist when the franchise was

granted. The exercise of the rights conferred was made more expensive and less profitable. Precisely such is the effect of the statute under consideration. It differs, perhaps, in the degree of the burden which it imposes, but it will be difficult to show wherein it differs in principle. If the general incorporation law of the state had contained a provision that all railroads incorporated under it should be absolutely liable for all damages by fire, occasioned in the operation of the road, it would not, we suppose, be contended that such a provision would be repugnant to any constitutional requirement. This shows that it does not contravene any just notion of property, that the owner of it should be liable for the damages occasioned by its use. It is true the generally received doctrine is that, for a lawful and reasonably careful use of property, the owner shall not be made answerable in damages. But this is simply a principle of the common law. It is not so wrought into the idea of property, nor is it so hedged about by the constitution that the legislature may not change it. It is a principle of the common law that the owner of vicious domestic animals shall not be liable for the injuries they inflict, until he has had knowledge of their vicious propensities, and neglects to restrain them. Yet it would scarcely be claimed that an act of the legislature making the owner liable for such injuries, without such knowledge, would be unconstitutional. That would be a case in which one of two equally innocent persons must suffer, and it certainly would be as competent for the legislature to declare that the loss shall be borne by the owner of the animal, as it now is for the common law to visit the loss on the person injured.

If, then, in the nature of the interests involved, there could have been no objection to a general provision in the incorporation law making railroads liable for all damages occasioned by fire, there can in the nature of such interests, be no valid objection to imposing such liability after the incorporation of the company, for the law contains no guaranty that a corporation shall be exempt from such interference. The right to enact the statutes above considered is derived under the

police power of the state. To the same power is referred the
right to establish regulations requiring existing railways to
ring the bell or blow the whistle at public crossings, and also
to enact laws giving a right of action to the representatives of
persons killed by the wrongful act of another. If the statute
in question can be brought under the general police power of
the state, its constitutionality will not be questioned. This
police power is very extended in its application. It cannot
take the property of A. and vest it in B., for this the consti-
tution expressly prohibits. But short of this limit it is diffi-
cult to impose upon it any restriction.

In *Thorpe v. Rutland & Burlington R. R., supra*, Red-
field, Chief Justice, says: "This police power extends to the
protection of the lives, limbs, health, comfort and quiet of all
persons, and the protection of all property within the state."
And in *Commonwealth v. Alger*, 7 Cush., 84, Chief Justice
Shaw says: "We think it is a settled principle, growing out
of the nature of well ordered civil society, that every holder
of property, however absolute and unqualified may be his
title, holds it under the implied liability that his use of it
shall not be injurious to the equal enjoyment of others having
an equal right to the enjoyment of their property, nor injurious
to the rights of the community. All property in this Com-
monwealth is   *   *   *   held subject to those general regula-
tions which are necessary to the common good and general
welfare. Rights of property, like all other social and con-
ventional rights, are subject to such reasonable limitations in
their enjoyment as shall prevent them from being injurious,
and to such reasonable restraints and regulations established
by law as the legislature, under the governing and controlling
power vested in them by the constitution, may think necessary
and expedient. This is very different from the right of emi-
nent domain—the right of a government to take and appro-
priate private property whenever the public exigency requires
it, which can be done only on condition of providing a rea-
sonable compensation therefor. The power we allude to is
rather the police power, the power vested in the legislature
by the constitution to make, ordain, and establish all manner

of wholesome and reasonable laws, statutes and ordinances, either with penalties or without, not repugnant to the constitution, as they shall judge to be for the good and welfare of the commonwealth, and of the subjects of the same. It is much easier to perceive and realize the existence and sources of this power than to mark its boundaries, or prescribe limits to its exercise."

In the License Cases, 5 Howard, 504, Mr. Chief Justice Taney, on page 583, says: "But what are the police powers of a state? They are nothing more or less than the powers of government inherent in every sovereignty, to the extent of its dominions. And whether a state passes a quarantine law, or a law to punish offenses, or to establish courts of justice, or requiring certain instruments to be recorded, or to regulate commerce within its own limits, in every case it exercises the same power; that is to say, the power of sovereignty, the power to govern men and things within the limits of its dominion. It is by virtue of this power that it regulates; and its authority to make regulations of commerce is as absolute as its power to pass health laws, except in so far as it has been restricted by the constitution of the United States."

The case of *The Commonwealth v. Certain Intoxicating Liquors*, 115 Mass., 153, is strongly in point. In that case complaint was made, under the statute of 1869, chapter 415, section 44, against certain intoxicating liquors alleged to have been deposited by Patrick O'Connell in a certain vehicle, and being conveyed by him to some unknown person. The Boston Beer Company appeared and claimed an interest in certain of the liquors seized. At the trial it was agreed that the Boston Beer Company was incorporated under the statute of 1827 for the purpose of manufacturing malt liquors in the city of Boston, and that the liquors claimed by the Boston Beer Company were malt liquors, and were manufactured and owned by the said corporation, and were being transported by O'Connell, as its agent, to its place of business for the purpose of sale.

The claimant asked the court to instruct "that the statute of 1869, chapter 415, and the acts in addition thereto prohibiting the manufacture and sale and the transporting of intox-

icating liquors, impair the obligation of the contract contained in the charter of said company, and are in violation of the constitution of the United States, and not therefore binding on said company."

The court held that this instruction was properly refused. In the course of the opinion the court said: "The authority of the legislature over the property, or the use of the property, of a corporation is not lost because no power is reserved to repeal or amend its charter. Any laws the sovereign power may find it necessary or salutary to enact, regulating, controlling, restricting or prohibiting the sale of a particular kind of property for the general benefit, apply as well to the property of corporations, like the claimant, as to individuals. Such laws are in the nature of police regulations, and individuals and corporations are alike subject to them. Indeed, all property is held subject to them, and it is immaterial that the restriction is imposed after the property is acquired, or becomes valuable, or after the charter is granted, or before it became necessary, in the judgment of the legislature, to pass a law on the subject. Every such law limits, restrains, impairs, and in some cases destroys the uses which were previously enjoyed of the property so made the subject of legislation, but the extent to which it may do so does not affect the validity of such laws, or their equal application to the owners of such property. They are presumed to be passed for the common good, and to be necessary for the protection of the public, and cannot be said to impair any right or the obligation of any contract, or to do any injury in the proper and legal sense of these terms." See *Brick Presbyterian Church v. New York*, 5 Cowen, 538.

It would seem that a power so nearly omnipotent must be potent enough to require that the owner of property shall be liable for the damages its use occasions.

Our constitution provides that private property shall not be taken for public use without just compensation. Yet the very law under which defendant is incorporated authorizes the incorporation of railways, and the employment of a species of locomotion which experience has proved is very destructive to

private property. The constitutional right to do so has never, as we are aware of, been questioned, and it would startle the legal mind if it should be questioned at the present day. If, then, the legislature may authorize to be put in force a power which, in some instances and under some circumstances, will cause damage to private property, why may not the legislature also say that the person who employs that force shall be answerable for the damages which it occasions? The statute simply recognizes the doctrine that the use of the locomotive engine is the employment of a dangerous force; that sometimes, notwithstanding the exercise of the highest care and diligence, it will emit sparks and cause destructive conflagrations; that when this occurs loss must fall upon one of two innocent parties; that heretofore that loss has been borne by the owner of the property injured; hereafter it shall be borne by the owner of the property causing the injury. In *Conn v. May*, 36 Iowa, 240, we held, under a statute of this state that the person who, at a certain season of the year, places out fire upon his own premises and allows it to escape, is absolutely liable for the injuries occasioned. Although that case was twice argued before us counsel did not even suggest a doubt as to the constitutionality of the law. In 1840 a statute was passed in the State of Massachusetts in all respects similar to ours except that it gives the railroad corporation an insurable interest in the property for which it may be held responsible in damages. Statutes of 1840, chapter 85. In *Lyman v. The Boston & Worcester R'y Co.*, it was enforced against a railroad established before its passage. The question of its constitutionality was not raised.

What the policy of this legislation may be experience alone can show. It may be that it will prove to be unreasonably severe, and to stand in the way of material progress and the best interests of the country at large. It may, upon the other hand, promote a high degree of skill and care, and stimulate the invention and use of improved appliances, lessening the danger of fires, and greatly increasing the safety of property, without any detriment to public interests. With these questions we have nothing to do.

, For us it is enough to know that the statute contravenes no constitutional provision, state or national; and that it does not do so we entertain no doubt.

II. Appellant further claims that the law in question is repugnant to the constitution because it violates the contract

2. RAILROADS: right of way: damages.

between the land owner and the corporation under which the right of way was acquired. It is claimed that the liability to damages from fire was taken into account in assessing damages for right of way, and was. compensated in the payment of those damages. Whatever the rule may be with regard to damages to improvements existing at the time of the assessment, and contiguous to the railroad, it. is clear to us that the principle contended for can have no application to the present case. The answer does not allege how near the injured premises are situated to the railroad, but the agreed statement of facts shows that at the nearest point they are almost one mile distant. Conceding it to be true as alleged in the answer, and for the purposes of the demurrer it must be considered as admitted, that the right of way was procured from the then owner of the land upon which the property alleged to have been injured was situated; still it cannot be supposed that injuries from fire to fences not then built and timber, both situated almost a mile from the railroad, formed an element in the estimation of damages.

III. It is claimed that plaintiff cannot recover because of contributory negligence. The question of negligence was submitted to the court and determined upon the agreed statement of facts adversely to defendant. We discover no error in the court's finding in this particular. *Kellogg v. The Chicago & North Western R'y Co.*, 26 Wis., 223.

IV. It is claimed that plaintiff cannot recover. without having served on defendant written notice of the injury, as

3. ——: ——: loss by fire.

required in section 1289, Code 1873. This notice is necessary only when double damages are sought to be recovered.

. We discover no error in the record.

AFFIRMED.