# JAMES B. YEATMAN

*vs.*

ALBERT G. TOWERS ET AL., CONSTITUTING THE PUB-
LIC SERVICE COMMISSION OF MARYLAND; SUBUR-
BAN WATER COMPANY, A CORPORA-
TION OF MARYLAND.

*Water companies: regulation of price; power of Public Service
Commission; water plant owned by an individual.
Police power.*

Under the Public Service Commission law (Code, Article 23,
section 413), a person who, by contract, undertakes to supply
from a water plant erected by himself, at least one hundred
houses with drinking water sufficient for the needs of the people,
it constitutes a distinctly public service.                p. 517

And where there is a *merger* of several such plants into one
corporation, although the separate entity of each is not pre-
served, the aggregate forms one entire public service corpora-
tion, amenable to legal regulations.                p. 517

The right to regulate rates for which water companies or
individuals furnish water to the public is one that is within
the police powers of the State, and one which may validly be
committed by the Legislature to a board or commission.   p. 517

Contracts when entered into, even between individuals, are
subject to the police powers of the State, whenever such con-
tracts relate to matters which are or may be subject to the
exercise of such powers.                p. 518

*Decided June 24th, 1915.*

Appeal from the Circuit Court of Baltimore City. (Dob-
ler, J.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe,
Burke, Urner, Stockbridge and Constable, JJ.

*Geo. W. Lindsay* (with whom were *Richd. B. Tippett &
Son* on the brief), for the appellant.

*W. Cabell Bruce, General Counsel to the Public Service
Commission,* for the appellees.

Stockbridge, J., delivered the opinion of the Court.

In April, 1906, Elias A. Blackshere acquired from Clar-
ence M. Griffin a tract on Park Heights avenue, just outside
the corporate limits of Baltimore City, for the purpose of
improving the land by the erection of dwellings thereon.
At the time of the purchase there was no available water
supply for the houses so to be built, and accordingly by an
agreement of the same date as the deed, Griffin undertook
to furnish a water supply "for all the buildings, in number
about one hundred," contemplated to be erected by Black-
shere. The agreement gave to Griffin "the sole and exclu-
sive right and privilege to lay water mains and pipes * * *
in, about and upon said lands," and further provided the
water rate to be charged for the service in the following lan-
guage:

> "For each dwelling house not over ten dollars per
> annum, or if meter service be preferred by any occu-
> pant of said houses, the charges shall not be in excess
> of twenty cents for each one thousand gallons of water
> consumed."

Fifteen of the houses built by Blackshere on the land so
conveyed to him now belong to the appellant Yeatman, and

the water plant constructed by Griffin was by him sold to the Park Heights Water Co., and by it in turn to the Suburban Water Co.

In 1911 the last named corporation filed with the Public Service Commission a new and different schedule of rates to be charged, and again in 1914 a revised schedule. Objections appear to have been made to this schedule. A hearing was had before the Public Service Commission, and on October 14th an opinion and order of the Commission filed. By that order, after imposing certain requirements upon the Water Company, the following provisions regulating rates appear:

> "House with bathroom—Minimum quarterly charge, $3.75, entitling to consumption of 12,500 gallons; excess use to be charged for at rate of 40c. per 1,000 gallons.

> "House without bathroom — Minimum quarterly charge, $2.50, entitling to consumption of 8,000 gallons; excess use to be charged for at the rate of 40c. per 1,000 gallons."

Two days after this order the bill in this case was filed to enjoin putting into effect the provisions of the order in relation to rates. A demurrer to the bill was sustained by the Circuit Court of Baltimore City, and this appeal followed.

The grounds upon which the appellant relies may be grouped under two heads:

(1) That the agreement of 1906 was an agreement between individuals, and related to a private, rather than a public service, and so is outside the jurisdiction of the Public Service Commission;

(2) That as the agreement antedated the creation of the Commission, that body lacks power to in any way modify the terms of the agreement without infringing the constitutional inhibition against legislation impairing the obligations of contracts.

The first of the grounds as stated involves several distinct matters, but before taking up the consideration of these, there are to be noted certain facts appearing in the bill and agreement, which was filed as an exhibit.  By the language of the agreement, Griffin was given the monopoly of supplying water to the dwellings to be erected on the land conveyed to Blackshere, and there was no restriction upon him limiting him to supply only those houses; and in the next place by the order of the Commission there were two classes of service provided for—one at a rate precisely that named in the Griffin-Blackshere agreement, and the other a somewhat higher rate for a different and greater service.  The agreement nowhere specied the nature of the service to be performed except in general language—to furnish · Blackshere "an adequate supply of water to enable said Blackshere to carry on his contemplated building operations on the above lands, and to fully establish, install and complete a plant of sufficient capacity to furnish every building to be so erected with sufficient potable water for the needs of those persons who may occupy the same."  The undertaking of Griffin by a strict construction of the language of the agreement was only to supply a sufficient amount of water, suitable for drinking, to supply the needs of the persons who might occupy the houses to be built by Blackshere.

At the outset of the case the question is raised as to the jurisdiction of the Public Service Commission in the premises, at the time of its appointment under the Act of 1910.  The dates of the transfer from Griffin to the Park Heights Water Company and by it to the Suburban Water Company do not appear in the bill or exhibits.  But it is immaterial whether the water supply was being furnished by Griffin or by one of the corporations named.  All alike were within the jurisdiction of the Commission by the express language of the Statute, Code, Article 23, section 413, "the term water company when used in this sub-title includes every corporation, company, association, joint stock company or association, partnership or *person* * * * owning, operating,

managing or controlling any plant or property * * * distrib-
uting or selling for distribution or selling or supplying for
gain any water." This language is nearly, if not quite, con-
clusive of the question. The only possible inquiry open is,
whether Griffin was engaged in a public as distinguished from
a private service. The bill concedes that the plant con-
structed was for the purpose of supplying water to about
one hundred dwellings. If this is to be regarded as consti-
tuting a private service, how many are necessary to trans-
form it into a public service? Griffin was not limited in his
agreement with Blackshere to supply only a definite, limited
number, nor was the undertaking one to supply only some
of the occupants of the houses to be erected, but all; this
was therefore distinctly a public service. But if it be as-
sumed *ex gratia* that the service as rendered by Griffin was
one private in its nature, when that plant became merged
into the larger ones, which were corporations engaged in a
public service business, the public character of the service
extended to the entire plant. It is like a case where the rail-
road corporation absorbs a number of petty connecting roads
The separate entity of each is not preserved, but the aggre-
gation forms one entire public service corporation, amenable
to legal regulations in all its parts.

The right to regulate rates for which water will be sup-
plied is in its nature the execution of one of the powers of
the State, of which it can no more divest itself than it can
part with its power of taxation. The power may or may not
be exercised, but its non-user is not an abandonment of the
right. The nature of the right as an exercise of the power
of the State is commonly referred to that class of powers
designated as the police power, and the right extends not
merely to the regulation of rates, but to the regulation of
other matters connected with the service afforded to the
public. This power is one which may be exercised by the
Legislature directly, or its exercise may be committed by
the Legislature to a Board or Commission, as has been done

in this State by the creation of the Public Service Commission, and since the supplying of water must by reason of the nature of the service be deemed to be a public service, the regulation of the rates at which it shall be furnished falls clearly within the powers of the Commission. By section 415 of Article 23, the powers of that body are said to extend "to all water companies and to the land, property, dams, water supplies, canals or power stations, and the operation of the same within this State," and by section 456 the same powers of regulation of the rates conferred on the Commission with regard to common carriers are made applicable to water companies.

There remains for the disposition of this case only the question whether the order of the Public Service Commission, passed in the exercise of the power conferred upon it by the Legislature, has the effect of impairing the obligation of a contract. As already pointed out, one of the schedules embodied in the order of the Public Service Commission fixed a minimum rate identical in amount with the rate named in the agreement between Griffin and Blackshere, and that agreement not having provided for any particular kind of service, the order as promulgated can not be said in any way to be in violation of the agreement. But the legal principle here involved is subject to and affected by a further consideration. Contracts, even as between individuals, when entered into are necessarily subject to the control of the police power of the State, whenever such contract relates to matters which are or may be subject to the exercise of such powers, and as far back as the case of *Munn* v. *The People,* 94 U. S. 113, it was laid down that when the owner of property devotes it to a use in which the public has an interest, he in effect grants to the public an interest in such use, and must to the extent of that interest submit to be controlled by the public for the common good as long as he maintains the use. Some of the cases which have dealt with situations where there had been an establishment of rates directly by

the Legislature, have distinctly denied the theory that such legislative establishment of rates constituted any contract whatever, and have held, accordingly, that the rates established were liable to change at any time by the legislative authority which had originally enacted them. The true principle, which must control in a case like the present, is that laid down in *Manigault* v. *Spring,* 199 U. S. 473, in the following language: "It is the settled law of this Court that the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected. This power, which in its various ramifications is known as the police power, is an exercise of the sovereign right of the government to protect the lives, health, morals, comfort and general welfare of the people, and is paramount to any rights under contracts between individuals."

Finding no error in the decree appealed from, the decree of the Circuit Court of Baltimore City sustaining the demurrer to the bill of complaint and dismissing the same will be affirmed.

*Decree affirmed, with costs.*