AETNA INSURANCE COMPANY et al., Appellants, v. CHICAGO GREAT WESTERN RAILROAD COMPANY et al., Appellees.

**STATUTES:** Retroactive Operation—Justifiable Impairment of Contract. A statute which renders a railway company liable, in the operation of its railway, for negligently injuring property situated on its right of way, notwithstanding any "*contract to the contrary,*" is clearly within the police power of the state, and validly applies to such a contract, even though it was executed *prior to the passage of the statute.* So held as to Sec. 2110-m, Code Supp., 1913.

*Appeal from Howard District Court.*—H. E. TAYLOR, Judge.

DECEMBER 31, 1920.

ACTION by several insurance companies jointly against the defendant railway company to recover $2,500 paid in losses to Gilchrist & Company upon an elevator building situated upon defendant's right of way. A demurrer to defendant's answer was overruled, and plaintiff appeals.—*Reversed.*

*H. L. Spaulding* and *McCook & Lyons,* for appellants.

*Carr, Carr & Evans* and *Reed & Pergler,* for appellee.

LADD, J.—Plaintiffs allege in their petition that the defendant Gilchrist & Company owned a building situated on the right of way of the Chicago Great Western Railroad Company at Elma, Iowa, used for receiving and storing articles of commerce transported or to be transported, which, on May 17, 1917, caught on fire from sparks and cinders emitted from one of defendant's locomotives, and was totally destroyed; that, at the time, Gilchrist & Company held policies of insurance on said building, issued by plaintiff companies as follows: By the Phoenix Assurance Company, $625; by the Commonwealth Insurance Company, $625; and by the Aetna Insurance Company, $1,250. They also allege that, by and upon the payment of the loss, each of plaintiffs became entitled, by right of subrogation,

to the claim of Gilchrist & Company against the defendant railroad company to the extent of the loss paid thereby, for which amount separate judgments are asked against it.

Defendant answered, admitting the loss and the payment of the sums alleged by plaintiffs to Gilchrist & Company, and, in a separate division or count thereof, and as a separate defense to plaintiff's cause of action, set up a lease with Gilchrist & Company, dated November 1, 1912, by the terms of which the latter assumed all loss or damage by fire, and released the railroad company from liability therefor. Plaintiff demurred to this count of defendant's answer, upon the ground that this provision of the lease contravenes Section 2110-m of the 1913 Supplement to the Code, and that same is, therefore, void and unenforcible. The demurrer was overruled, and plaintiff appeals. The ruling on the demurrer presents the only question for our decision.

Section 2110-m, which forms Section 2 of Chapter 178, Acts of the Thirty-fifth General Assembly, went into effect July 4, 1913, and is as follows:

"In the event that any elevator, warehouse, coal shed, ice house, buying station, flour mill or any other building used for receiving, storing or manufacturing any article of commerce transported or to be transported, situated on the right of way or other land of a railroad company shall be injured or destroyed by the negligence of any railroad company, or the servants or agents of any railroad company in the conduct of the business of such company, the railroad company so causing such injury or destruction shall be liable therefor to the same extent as if such elevator, warehouse, coal shed, ice house, buying station, flour mill or any other building used for receiving, storing or manufacturing any article of commerce transported or to be transported was not situated on the right of way or other land of such railroad company, any provision in any lease or contract to the contrary notwithstanding."

It will thus be seen that the lease containing the provision relied upon by defendant as a defense was entered into prior to the enactment of this statute by the thirty-fifth general assembly, and that the fire which destroyed the building insured, occurred subsequent thereto. Defendant does not seek to avoid

the provisions of Section 2110-m upon constitutional grounds, but contends that it was intended by the legislature to operate prospectively only, and that existing contracts are not affected thereby; whereas appellants in argument assert that the statute was intended to operate upon existing, as well as subsequent,. contracts containing provisions relieving a railroad company from liability for the destruction of buildings situated on its right of way by fire caused by its negligence; and that, as same was enacted in the exercise of the police power, it does not violate the provision of the Constitution of the United States prohibiting the enactment of laws impairing the obligations of contracts. The statute contemplates property injured or destroyed subsequent to the enactment thereof, and only when caused by the negligence of the company or its agents or servants, in the conduct of the business of said company. In other words, liability is predicated solely on a future wrong, which presumably may be avoided by the continuous exercise of ordinary care, but may not, by any clause in any lease or contract existing at the time of the wrong perpetrated. This plainly appears from the last clause of the law, declaring the liability, "any provision in any lease or contract to the contrary notwithstanding." To construe this as contended by appellee would exact the addition to the words "any lease" of the words, "not executed prior to the enactment of this statute," or "not heretofore executed." The expression "any provision in any lease or contract" is broad enough to include *every release* from liability, regardless of form, and every lease or contract, regardless of when made, if existing at the time of the injury or destruction. There is nothing in the language of the statute restricting its meaning to leases or contracts of a subsequent date. All leases are treated as a class, and any one of them may not relieve the railroad company from liability for the consequences of its own negligence. Of course, injury or destruction subsequent to the taking effect of this statute was contemplated, and it is equally true that only a clause or provision of a lease existing at that time might, in any event, be interposed as a defense. The statute, then, cannot well be said to be retroactive,—certainly in no respect other than in dealing with provisions in existing contracts executed prior to its enactment. The evil sought to be

remedied is precisely the same, whether the release from liability is found in a lease or contract antedating the enactment of this statute or subsequently entered into. As laid down in *Galusha v. Wendt*, 114 Iowa 597:

"If the statute refers to an existing condition, it is applicable, although the condition is one which has been in existence before the taking effect of the statute, and the construction gives it, therefore, a retroactive effect, notwithstanding the language of the statute is prospective only."

The evident design of the lawmakers was to eliminate the ruling of a bare majority of the court in *Griswold v. Illinois Cent. R. Co.*, 90 Iowa 265, and thereby remove any existing barriers to requiring that railroad companies answer for the consequences of their own negligence. There might be some ground for limiting the effect of the inclusive language employed by the legislature, were this essential to uphold the constitutionality of the statute. But, however interpreted, it is not inimical to the Constitution, as the authority to enact is plainly within the police power of the state. The meaning of that term is well expounded by Weaver, J., in *McGuire v. Chicago, B. & Q. R. Co.*, 131 Iowa 340:

"The police power, as that term is commonly employed, may be paraphrased as society's natural right of self-defense, and its definition and limitation vary with the circumstance calling for its exercise. To embalm it in any fixed or rigid formula would be to destroy its value, for it would then be deprived of its indispensable quality of adaptation to changing conditions, and thus defeat the ends it was intended to promote. 6 Words & Phrases, 5424, and cases there cited. While protection of public health and public morals and the promotion of social order are peculiarly within its province, these are but instances of its application, and do not limit its sphere of action. *People v. Budd*, 117 N. Y. 1 (22 N. E. 670, 682, 5 L. R. A. 559, 15 Am. St. Rep. 460); *Barbier v. Connolly*, 113 U. S. 27 (5 Sup. Ct. 357, 28 L. Ed. 923). The police power of the state is the power to govern men and things within the limit of its dominions. It comprehends all those general laws of internal regulations necessary to secure peace, good order, health, and prosperity of the

people, and the regulations and protection of property and property rights."

Chief Justice Shaw, in *Commonwealth v. Alger,* 7 Cush. (Mass.) 53, defined it as follows:

"The power we allude to is rather the police power, the power vested in the legislature by the Constitution, to make, ordain, and establish all manner of wholesome and reasonable laws, statutes, and ordinances, either with penalties or without, not repugnant to the Constitution, as they shall judge to be for the good and welfare of the commonwealth, and of the subjects of the same. It is much easier to perceive and realize the existence and sources of this power than to mark its boundaries, or prescribe limits to its exercise."

Other definitions of similar import are found in *State v. Armour Packing Co.,* 124 Iowa 323; *State v. Schlenker,* 112 Iowa 642; *Rodemacher v. Milwaukee & St. P. R. Co.,* 41 Iowa 297; *Marshalltown L. P. & R. Co. v. City of Marshalltown,* 127 Iowa 637; *Colorado Postal Tel. Co. v. City of Colorado Springs,* 61 Colo. 560 (158 Pac. 816); *Stone v. State of Mississippi,* 101 U. S. 814 (25 L. Ed. 1079); *Barbier v. Connolly,* 113 U. S. 27 (28 L. Ed. 923); *Louisville & N. R. Co. v. Kentucky,* 161 U. S. 677 (40 L. Ed. 849); *Allyn's Appeal,* 81 Conn. 534 (71 Atl. 794).

Section 1289 of the Code of 1873, corresponding to Section 2056 of the Code of 1897, making railway corporations liable for damages sustained on account of loss or injury by fire to property, caused by the operation of a railway, was upheld in *Rodemacher v. Milwaukee & St. P. R. Co.,* 41 Iowa 297, as a proper and valid exercise of the police power of the state. The statute in question was enacted in the exercise of the same lawful power, and for a similar purpose. Fires originating from the operation of railway locomotives, in buildings upon its right of way, may often be readily communicated to near-by buildings, resulting in great loss to private or public property, and possibly to life. The question here involved is whether Section 2110-m, supra, as applied to the provisions of the lease set forth in Division 2 of defendant's answer, is invalid, because of the constitutional provision prohibiting the enactment of laws impairing the obligation of contracts. It is fundamental that a state can by no

act deprive itself of the right or authority to enact legislation within the proper scope of its police power, although the effect of a particular enactment be to impair the obligation of private contracts, and prevent the enforcement of the terms thereof. *Manigault v. Springs,* 199 U. S. 473 (50 L. Ed. 274); *Boston Beer Co. v. Commonwealth of Mass.,* 97 U. S. 25 (24 L. Ed. 989); *New Orleans G. L. Co. v. Drainage Commission,* 197 U. S. 453 (49 L. Ed. 831); *New Orleans Gas Co. v. Louisiana Light Co.,* 115 U. S. 650 (29 L. Ed. 516); *New York & N. E. R. Co. v. Bristol,* 151 U. S. 556 (38 L. Ed. 269); *Lynch v. Baltimore & O. S. W. R. Co.,* 240 Ill. 567 (88 N. E. 1034); *Commonwealth v. Sherman Mfg. Co.,* 189 Mass. 76 (75 N. E. 71); *City of Seattle v. Hurst,* 50 Wash. 424 (97 Pac. 454); *Washington v. Atlantic C. L. R. Co.,* 136 Ga. 638 (71 S. E. 1066); *Grand Trunk W. R. Co. v. City of South Bend,* 174 Ind. 203 (91 N. E. 809); *Attorney General v. Williams,* 178 Mass. 330 (59 N. E. 812); *Yeatman v. Towers,* 126 Md. 513 (95 Atl. 158); *State v. Redmon,* 134 Wis. 89 (114 N. W. 137).

In *Manigault v. Springs,* supra, the court said:

"It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the state from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected. This power, which, in its various ramifications, is known as the police power, is an exercise of the sovereign right of the government to protect the lives, health, morals, comfort, and general welfare of the people, and is paramount to any rights under contracts between individuals. Familiar instances of this are where parties enter into contracts, perfectly lawful at the time, to sell liquor, operate a brewery or distillery, or carry on a lottery, all of which are subject to impairment by a change of policy on the part of the state, prohibiting the establishment or continuance of such traffic: in other words, that parties, by entering into contracts, may not estop the legislature from enacting laws intended for the public good. While this power is subject to limitations in certain cases, there is wide discretion on the part of the legisla-

ture in determining what is and what is not necessary,—a discretion which courts ordinarily will not interfere with.''

Laws enacted in the interest of the public health, morals, and welfare are valid, within the police power of the state, and are not rendered invalid under Section 10, Article I, of the Constitution of the United States, because their effect may be to impair the obligation of private contracts. The whole subject is exhaustively treated in many of the cited cases, and it is unnecessary here to repeat the arguments offered in further support of their conclusion. The statute in question is remedial in nature, and the evil, as said, if existing, is quite as persistent in the provisions of existing contracts as though they were thereafter inserted. All intended by the statute is that a railroad company may not shield itself from the consequences of its own negligence. The removal of releases or exemptions contained in the leases or contracts is well calculated to accomplish this, and this will be done if the language of this statute is construed according to the context and the approved usage of the language. The demurrer should have been sustained.—*Reversed.*

WEAVER, C. J., PRESTON, SALINGER, and ARTHUR, JJ., concur.

STEVENS, J., dissents.