ANTIQUE VILLAGE INN, INC., A CORPORATION OF NEW JERSEY, PLAINTIFF, v. PACITTI, ROBINS & ANGLIN, INC., *ET AL.*, DEFENDANTS.

RICHARD I. RUBIN & CO., INC., A CORPORATION, ETC., *ET AL.*, PLAINTIFFS, v. ANTIQUE VILLAGE INN, INC., A NEW JERSEY CORPORATION, *ET AL.*, DEFENDANTS.

RICHARD I. RUBIN & CO., INC., A CORP., ETC., *ET AL.*, PLAINTIFFS, v. ANTIQUE VILLAGE INN, INC., A NEW JERSEY CORP., *ET AL.*, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided June 20, 1978.

*Mr. Jay H. Greenblatt* for Antique Village Inn, Inc., *et als.* (*Messrs. Greenblatt and Greenblatt,* attorneys).

*Mr. Samuel J. Serata* for Richard I. Rubin & Co., Inc., *et als.* (*Messrs. Serata & Stanger,* attorneys).

MILLER J. C. C. (temporarily assigned). Antique Village, t/a Inn on the Mall, moves for relief from Final Judgment entered on February 14, 1978. Paragraph 7 of the order of final judgment gives the Inn the alternative of either acquiring necessary utilities directly, or entering into a Schedule F agreement with the Mall.

The Inn now urges the court to find that the Mall is subject to regulation by the Board of Public Utility Commission and that any rates charged to the Inn should be set by the PUC.

*N. J. S. A.* 48:2-13 provides that the Board of Public Utilities Commissioners shall have general supervision and regulation of and jurisdiction and control over all public utilities. "Public Utility" is defined to include a corporation which may own, operate, manage or control gas, electric, heat, power, water, oil, sewer, solid waste collection or disposal for public use, under privileges granted by the State or a political subdivision.

In the case of *In re Petition of N. J. Natural Gas Co.,* 109 *N. J. Super.* 324 (App. Div. 1970), the court indicated that the two criteria set out by the statute must be met for the proper exercise of jurisdiction by the Board, namely, (1) whether the system, plant or equipment is operated for "public use" and (2) whether this is done under privileges granted by the State or any of its political subdivisions.

In *Lewandowski v. Brookwood Musconetcong River, etc., Ass'n,* 37 *N. J.* 433 (1962), the Supreme Court held that whether a water system operated by an incorporated association of lot owners in a residential development for the benefit of those purchasing lots in the development was operated for "public use" depended on the "character and

extent of use." The Association's water system was held to be a public utility since it supplied "a broad group of consumers." The fact that the supplier was under no obligation to supply water to the general public or any portion thereof was immaterial with respect to the jurisdiction of the board.

While a great many side issues have been sought to be presented, the case turns upon whether the landlord has the right to purchase energy from a utility and distribute the same to its tenants at a different (and presumably greater) rate without being compelled to submit to PUC jurisdiction. It is important to note that the only distributees are tenants under an intricate and complicated lease in an integrated shopping center. This court holds the landlord is not so compelled.

In the case of *Public Service Comm'n of Maryland v. Howard Research and Develop. Corp.*, 271 *Md.* 141, 314 *A.* 2d 682, 75 *A. L. R.* 3d 1193 (Ct. App. 1974), the court dealt with Columbia Mall Shopping Center, an enclosed facility consisting of two major department stores and approximately 100 smaller retail stores which purchased electricity from a regulated utility and then distributed electricity to its tenants at a profit, but at the same time, charged no more than they would have to pay for the electricity from the local utility. As opposed to the Cumberland Mall method, the Columbia Mall provided check metering outlets to the tenants of premises to measure actual consumption and to provide a more accurate basis for determining the specified amount to be billed. The issue came before the Maryland Public Utilities Commission which determined that the rates charged by Columbia Mall were subject to regulation. On appeal, the court reversed the Maryland Public Service Commission. In so doing, the Chief Justice first determined that where electricity is furnished and charged for as part of the rent, it was not a sale and pointed out that in such a transaction, the landlord was merely gambling on the fact that the price of electricity

would not be increased. On the other hand, where the landlord makes a separate charge for electricity, the landlord is merely taking less of a gamble. The Chief Justice concluded:

> The "gamble" taken by a landlord is irrelevant to the question of whether his activities are subject to regulation — a charge for electricity included in the rent is no less a sale than a charge made separate therefrom.
>
> We hold that The Public Service Commission Law does not extend to sales of electricity made by a landlord to its tenants as an incident to that relation. Our decision is, we think, wholly consonant with both the limits placed upon the Commission's jurisdiction in § 1 of Article 78, and the considerable weight of the authority from other jurisdictions. [75 *A. L. R.* 3d at 1202]

In the concluding paragraph, the Chief Justice distinguishes between the Shopping Mall case and the holding in the case of *Yeatman v. Towers,* 126 *Md.* 513, 95 *A.* 158 (Ct. App. 1915), in which it was held that an owner agreeing to furnish water for 100 houses is engaged in a public as distinguished from a private service, on the basis that the individual houses could be sold to any member of the public and where there was no landlord-tenant relationship. In the Columbia Mall situation, the sale of electricity was incidental to the lease, a private sale, limited to tenants, and made incidental to the business of renting commercial space.

Following the text of the case is an Annotation, "Landlord Supplying Electricity, Gas, Water, or Similar Facility to Tenant as Subject to Utility Regulation," 75 *A. L. R.* 3d 1204. Section 2 of the Annotation recites:

> It is not uncommon for landlords, particularly those with numerous tenants or those whose tenants consume large quantities of electricity, gas, water, or similar services, to provide their tenants with such services themselves rather relying upon the local public service utilities to supply their tenants. This is done, in recent cases at least, because such landlords have found that they can make a profit on these services at a charge to the tenant which is comparable to that imposed by the public utilities.

Although this practice has been in existence for a long time, it has recently become popular among the landlords of large shopping centers and apartment complexes, and appears to be spreading. Because of this, state public service commissions charged with regulating public utilities are attempting, with increasing frequency, to extend their regulatory jurisdiction to those who furnish such services. Public Utilities have been singled out for special regulation because they ordinarily operate as monopolies. Regulatory commissions have been given the task of providing to the public utilities those elements — especially control of rates and standards of service — which are provided by competition in most other enterprises. Whether or not a particular enterprise is subject to public utility regulation is generally determined by whether or not the agency conducting the enterprise holds itself out to service the public at large in a particular area. To be subject to regulation as a public utility, it is generally considered necessary that the supplier of the utility service offer this service to anyone desiring it in the area served by the facilities involved. This has been the ordinary meaning used by the courts in determining whether the property is "devoted to a public use" and is the general standard applied to landlords who supply services to their tenants. Under this standard, the overwhelming majority of courts have held that a landlord who provides such services to its tenants is not subject to regulation as a public utility. However, upon rare occasions some courts have found the landlord to be engaged in a public service and subject to regulation as a public utility. A modern case determined that since the *consumers* (retail merchants, tenants of a shopping center) devoted their property to a public use, the landlord who provided the service only to the tenants was a public utility.

Some courts look to the role that the utility service plays in the overall scheme of the landlord's enterprises, and use this — either by itself or in conjunction with the public nature of the service — to determine whether the service is subject to utility regulation. Where the landlord's service is found to be a mere incident of some other dominant service (ordinarily, the renting of premises), these courts have refused to treat the service as one subject to utility regulation.

It is not uncommon for commissions charged with regulating public utilities to assert their duty to protect the consumers as a determinant of their jurisdiction. The courts have uniformly rejected the need for consumer protection as the basis for public utility regulation of landlords who supply utility services to their tenants.

Various services have been provided by landlords in a variety of ways. Of course, the most common of these services provided by landlords are electricity, water, gas, and heat. But other services have also been provided. To provide a utility service, a landlord may install a plant to generate the electricity, manufacture the gas, pump

the water from its own wells, or the like, and sell its own product to its tenants. Or it may purchase the electricity, gas, water, or the like from a public service utility at wholesale prices and resell it to its tenants. The utility service may be provided to the tenants without metering, as a service included in the rent, or at a flat monthly charge. On the other hand, the premises of each tenant may be individually metered and charged according to the amount used. Although the courts have especially noted these details, the manner in which the service was provided and charged for has not been decisive in determining whether the landlord's utility services were subject to utility regulation.

The reasoning of the Maryland court coincides with that of Vice-Chancellor Berry in *Junction Water Co. v. Riddle,* 108 *N. J. Eq.* 523 (Ch. 1931), wherein he held that a landlord supplying water only to his own tenants do not come under the jurisdiction of the PUC because there was no "public use."

The application for relief from judgment is denied.